**THE GOVERNMENT OF THE VIRGIN ISLANDS,**
Plaintiff

v.

**CHARLES McBEAN and AMELIA McBEAN, Defendants**

Civil No. 17 — 1958

District Court of the Virgin Islands

Div. of St. Croix at Frederiksted

December 6, 1958

LEON P. MILLER, ESQ., United States Attorney, Charlotte Amalie, Virgin Islands, *for plaintiff*

LEADER AND PADILLA, ESQS., Frederiksted, Virgin Islands, R. H. AMPHLETT LEADER, ESQ., *for defendants*

MARIS, *Circuit Judge*[*]

From what seems to me to be the clear weight and preponderance of the evidence and from my examination of the location itself this afternoon I make the following findings of fact:

The road, a portion of which is here in question, follows in general the old estate line between Estate Camporico and Estate Hanna's Rest, running in a southerly direction from the Centerline Road to the sea. The portion of the road that is involved in this controversy is that portion of the road lying south of the northern line of Plots 144, 145, et seq., belonging to the defendants, extending across the road at which point they have installed a wire fence barring access by the public to the portion of the road which lies to the south of that point.

A map of the subdivision of the Whim Estate dated December 31, 1943 by the Government of the Virgin Islands shows a portion of the road here in controversy as being a roadway lying between Plot 144 on the west and Plots 103 and 152 on the east. This, as I understand, is a map which was made by the local government of these estates, title to which it had acquired, or the Municipality of Saint Croix had acquired, which was being subdivided for homesteading purposes, the lots being then or thereafter offered for sale. Subsequently, as I understand, this area or at least the unsold portion of this area of Whim Estate was acquired by the Federal Government, and by a map entitled "The Revised Subdivision Map of the Whim Estate," dated March 31, 1947, Plan No. SC-47-1, which has been offered in evidence as Government's Exhibit No.

[*]Oral opinion.

3, the same road is indicated, extending from the Centerline Road in straight line and in a southerly direction, passing the westward sides of Plots 121, 103, 152 and 170, and the eastward sides of Plots 144 and 169.

Shortly after that map was made, the defendants, Charles McBean and Amelia McBean, as joint tenants, acquired title from the Government of the United States to Unit No. 1 of the Whim Estate, which consisted of 87.6 acres more or less as shown on the map dated March 13, 1947, entitled "Revised Subdivision Map of Whim Estate," No. SC-47-1, recorded in Real Property Register No. 2, page 159 of the Office of the Recorder of Deeds of Saint Croix. Reference to the map shows that Unit No. 1, which defendants Charles and Amelia McBean acquired, consisted, among other plots, of Plots Nos. 102 and 103 on the east side of the road in controversy and Plots Nos. 144 and 169 on the west side of the road in controversy.

There is ample, credible evidence, and I find that the road in controversy has been used by the public as a public road for a great many years, running back as far as 1912. By an ordinance of the Municipality of Saint Croix, approved March 18, 1947, Bill No. 36, the Municipality requested the United States to convey to the Municipality certain property, among other things the public roads in Whim Estate. And by that ordinance the Municipality committed itself as a condition of the conveyance and in justification of it to "Dedicate all such roads to the perpetual use of the people of Saint Croix, and to keep open and maintain the same in like manner as other similar public roads are kept open and maintained by said Municipality, so that the farmers may have access to their lands and to the markets; may enjoy full freedom of communication with their neighbors and throughout the community; may conveniently reach public sources of potable water so essential to their welfare; and may be conveniently and

adequately serviced by the machinery service operated under the sponsorship of the Municipality."

By a deed dated May 20, 1947, the United States of America conveyed to the Municipality of Saint Croix certain property, including all the public roads shown on the map dated March 13, 1947, entitled "Revised Subdivision Map of the Whim Estates."

From these facts, which are clear and, I think, beyond any reasonable dispute, I conclude as a matter of law that the road in controversy here, the whole of which runs in the general vicinity of the property line between Estates Camporico and Hanna's Rest and then down to the sea, is a public road which has been dedicated to the use of the public (1) by virtue of having been indicated upon plans of property of the Municipality and later of the United States which was offered for sale with these roads shown upon the plans, (2) by virtue of the ordinance of the Municipality of Saint Croix and (3) by virtue of the deed from the United States to the Municipality of Saint Croix. Moreover, I conclude that the defendant, Charles McBean, is bound by the fact that this is a public road, in view of the fact, among other things, that his deed was for Unit No. 1, as shown on the Revised Subdivision Map of the Whim Estate, to which I have already made reference several times, and upon reference to that map it appears with perfect clarity that the road in question is laid out and lies between his Plot No. 103 and his Plots Nos. 144 and 169.

Since I have concluded that the road in question is a public road, which has been dedicated to the use of the public by the Municipality and by the United States Government while it owned this land, it follows as a necessary conclusion of law that the Government is entitled to maintain and keep the road open for the benefit of the people of Saint Croix, not only for those who live in the vicinity, but for all of the people of Saint Croix who may

have occasion to travel in that area. Since I have found that the defendants have closed off this road and prevented its use by the public, it follows that the Government is entitled to the relief which it seeks, namely, a mandatory injunction directing the defendant to remove the present fence; and a perpetual injunction restraining him from interfering with the use of the public road in question by the members of the public.

A decree in accordance with these findings and conclusions will be entered.